## McDANIELS v. CROSBY.

1. WITNESSES—ESTATES OF DECEDENTS—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

    In equity proceedings to recover certain property or its value, where the bill alleges that the property was deeded to complainant, and the deed, without being recorded, was destroyed by deceased and her beneficiaries, confederating together, the suit being defended by them and the personal representative of deceased, the testimony of complainant was not admissible under 3 Comp. Laws, § 10212 (3 Comp. Laws 1915, § 12553), excluding testimony as to matters equally within knowledge of deceased.

2. SAME—TRUSTS—PURSUING TRUST FUNDS.

    The same rule applies in an attempt to pursue a trust fund.

3. SAME—LOST INSTRUMENTS—DELIVERY.

    While there was some testimony other than that given by complainant which tended to prove the execution of the deed to complainant, upon complainant's testimony alone rested the delivery of the deed, and, held, the competent testimony upon the delivery of the deed with intent to vest title in complainant was insufficient.

Appeal from Wayne; Gilday, J., presiding. Submitted April 4, 1916. (Docket No. 3.) Decided June 1, 1916.

Bill by Lottie E. McDaniels against Fannie Whitaker Crosby and others to have certain property or its value restored to complainant. From a decree for defendants, complainant appeals. Affirmed.

*Lee N. Brown,* for complainant.

*George W. Eyster* (*Earle M. French,* of counsel), for defendants.

OSTRANDER, J. John Whitaker and Amelia Whitaker were husband and wife. The husband died, probably in August, 1903, and, it is assumed, he left no estate. Amelia died testate in March, 1913. The value of her estate, of what it consisted, and how it was disposed of, is not made to appear. Some time after the death of her husband, Amelia sold and conveyed certain premises known as lot 29 in Belleville, Wayne county, which she owned, receiving therefor $1,300. The date of this conveyance I do not find stated in the bill of complaint, or in the statement of facts in complainant's brief. In the brief for defendants it is said it was in 1910. This sum, or $1,250 of it, she expended in a building she caused to be erected upon a farm which she and her husband had conveyed to Walter Whitaker, in which premises Amelia had a life estate. The complainant, Lottie McDaniels, is not described in the bill of complaint as related to John or Amelia Whitaker, but in the brief for complainant is called "their niece." She filed her bill of complaint in this cause December 11, 1914. The theory of the bill and of her asserted right is not distinctly stated in her brief, but it is charged in the bill that in consideration of personal services which the

complainant rendered to John Whitaker in his lifetime, as well as some rendered to Amelia, it was understood between John and Amelia and complainant that after the death of John, Amelia should convey to complainant the above-described premises, and that Amelia did execute a warranty deed of the premises pursuant to this understanding, delivering it to complainant, who kept it for some time and then gave it to Amelia to keep for her until she should call for it. It was not recorded. The deed being so in the custody of Amelia, the defendants Whitaker, conspiring and confederating together to that end, secured the consent of Amelia that the said deed should be destroyed, and thereafter these confederates, with another, who is the executor of Amelia, caused the said deed to be burned and destroyed, and Amelia sold the property. The court is asked to decree that:

"The said defendants, who are abundantly able, and who now hold all of the property that they have procured by this fraudulent destruction of this deed—the said defendant estate and the said defendant beneficiaries of the said defendant estate, who so participated in the said destruction of the said deed—to either return the said property for which the said destroyed deed called, or the value thereof, to this complainant, and that the said value thereof, in the event that they, the said defendants, do not forthwith procure for her a title to the said lot 29 in the village of Belleville, the deed for which they destroyed, that then the amount that was procured by the said defendants for the said lot when the same was sold, together witn the interest thereon, be declared a lien on the estate of the said Amelia Whitaker, deceased, and a lien on the property procured from the said Amelia Whitaker by either and both of the other defendants either before the death of Amelia Whitaker or such property as they, or either of them, received from the estate of Amelia Whitaker, deceased, after her death, to the end that full and complete retribution and satisfaction of the said property which the said complainant was so fraud-

ulently swindled out of by the said destruction of the said deed shall be returned to her with the interest thereon, and that the amount found due shall be a lien on any and all the property possessed by any and all of the said defendants to this cause."

Sworn answers were filed by each defendant, the executor representing the estate, and in each most of the material allegations are expressly denied.

The theory of the bill seems to be that the estate of Amelia Whitaker was augmented by the sum she received from the sale of complainant's property, and that the estate, or the confederating beneficiaries, ought, in equity, to restore to complainant the value of what she thereby lost. In this view the suit is defended by the legatees and personal representative of a deceased person, and complainant is not admitted to testify at all to matters which, if true, must have been equally within the knowledge of such deceased person. 5 How. Stat. (2d Ed.) § 12856; 3 Comp. Laws, § 10212 (3 Comp. Laws 1915, § 12553). Considered as an attempt to pursue a trust fund, the same rule applies. There is some testimony other than that given by complainant which tends to prove the execution by Amelia of a deed of said premises to complainant. There is other testimony tending to prove that such a deed was seen in the possession of complainant. But upon complainant's testimony alone rests the delivery of the deed, its return by her to Amelia, and the conditions of said return. Complainant admits that it was understood that she was to execute to Amelia a life lease of the premises, and that this was not done. It is clear that if the deed was not delivered to complainant for the purpose of passing the title she has lost nothing, and if she did not return the deed to Amelia, it was not destroyed by Amelia, or with her knowledge and consent. And there is to be considered the admitted action of Amelia in selling and deeding the property

to another and innocent vendee. It further appears that when the will of Amelia was proposed for probate (the will is not before us) complainant contested the probating thereof. While the record upon this subject is not clear, it seems that the contest reached the circuit court for the county of Wayne, and was pending in November, 1914, about a month before the bill in this cause was filed. It further appears that in the probate court complainant was a witness. At the hearing of the present suit her testimony there given was referred to upon the cross-examination of complainant by reading from a transcript of the stenographer's minutes:

"*The Court:* Read the questions and answers and ask her if she so testified.

"*Q.* 'Q. Do you know anything about the property that was left to her by her husband?' (that refers to Amelia Whitaker; that is a question asked in the probate court). Your answer was, 'There was $6,000 in the bank at Ypsilanti when my uncle died.' 'Q. And was that the Ypsilanti Savings Bank?' Now your answer was this: 'I think it would be, it was in the bank at Ypsilanti; anyhow, there was a house and lot that my uncle lived in in her name, too. She was to have given me that and taken a life lease as soon as he was dead. She said when she felt able to go she would go down to the office and have it fixed up. She drank a good deal and was not able to go.'

"*A.* If I did, I didn't understand their question because I didn't mean to say that she didn't make that deed because she did.

"*Q.* Answer yes or no?   *   *   *

"*A.* Whatever testimony I gave there I naturally was telling the truth, but I must have misunderstood it or something because the deed was made and I had the deed. I calculated it was mine, but they was probating the will, and we wasn't proving up the deed then.

"*Mr. Brown:* In regard to that lease, the lease wasn't made then?

"*A.* No.

"*Q.* And it was the lease that you referred to?

"*A.* Yes.

. ."*Q.* That is all.

"*By Mr. Eyster* (continuing):

"*Q.* Now, Mrs. McDaniels, you received $300 to withdraw the objection?

"*A.* To settle the bill, but that was in regard to the will.

"*Q.* In your testimony in the probate court, in this will contest case on cross-examination, do you remember the time I cross-examined you in the probate court nearly two years ago, I asked you this question: 'Q. Do you know what became of this lot that you claim you are interested in, the lot in the village of Belleville? A. I have heard that she sold the house and lot which I was to have.'

"*The Court:* Was that question asked you, and was that the answer you made to it?

"*A.* It might be; I couldn't tell. The will was in question then.

"*The Court:* If you did so answer, was it true?

"*A.* Yes; I heard she sold the house and lot; yes.

"*Q.* 'I heard she sold the house and lot which I was to have'?

"*A.* Yes.

"*Q.* The next question: 'Q. She didn't own that when she died, did she? A. No, sir; not after she sold it.' That was true, was it not?

"*A.* Of course, after she sold it.

"*Q.* 'Now that is the only way in which you are interested in this estate, because of the clause in the first will here? A. I was to have the house and lot, yes, that was the only interest.'

"*Q.* The next question: 'Q. Then that is the only interest? A. My uncle claimed— Q. I want to know what your interest was; that is the only interest you have; that is all you are claiming? A. No, sir; I had a part of the money, my uncle told me. Now I had some trouble with my husband, and I said I didn't know whether I could live with him, and he said: "Don't take any of his lip; there is enough property to take care of you as long as you live." That is what he told me.' Is that true?

"*A.* Yes. sir.

"*Q.* 'She should have given me a part of the money. I find in the will that she has just gave me the house and lot.' That is true?

"*A.* Yes, sir.

"*Q.* 'And that is the only interest you had. A. That is all the interest which she gave me in that will.' Is that true?

"*A.* Yes, in the will; yes.

"*Q.* 'And what is your claim now, do you want the first will to stand? A. If any will stands, I want the first one, the first one.' Is that true?

"*A.* I want the value of the house and lot—that is what I want now—and the interest on the money, because it was mine."

From this it may be inferred that Amelia made two wills, in the first of which complainant was devised the premises in question. It also appears that in the will contest, in the circuit court, complainant, in consideration of $300, withdrew her objections to the probating of the will.

According to her own testimony, complainant never sought to have the deed returned to her after she had returned it to Amelia. She had no possession of the property and exercised no dominion over it. She heard, she says, that Amelia had sold it, but did not believe the report nor make any investigation. In its entirety the competent testimony upon the subject of the delivery of the deed with intent to vest title in complainant is not convincing. Beyond this, I am not satisfied that any connivance of defendants, any conspiracy, to induce Amelia to destroy the deed is proven, or that the testimony proves the destruction of a deed by Amelia or any one else. As is usual in cases like this one, the facts necessary to be established are interrelated so that, one essential fact being clearly established, other alleged facts appear to be more probable. Naturally, inferences from established facts are used to support others, not well established, but which established facts make probable. In this case, after a

careful consideration of all of the testimony, giving it its full probative value, it appears to me that complainant has not proven the facts asserted and relied upon by her. In this view, no legal propositions require discussion or statement.

The court below dismissed the bill, and in this action is affirmed. Defendants will recover costs of this appeal.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.